UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
ESTATE OF RAYMOND THOMAS,

                                    Plaintiff,

            -against-                                              **MEMORANDUM AND ORDER**

CIGNA GROUP INSURANCE and                                          09-CV-5029 (SLT)(RLM)
BANK OF AMERICA as successor to
COUNTRYWIDE FINANCIAL CORPORATION,

                                    Defendants.
-----------------------------------------------------------------x

**TOWNES, United States District Judge:**

In 2009, Raymond Thomas commenced this action pursuant to the Employment

Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* ("ERISA"), seeking to recover life

insurance benefits allegedly owed to him by the Countrywide Financial Corporation Group

Insurance Plan (the "Plan") following the death of his sister, Judith Thomas. After Life

Insurance Company of North America ("LINA"), a subsidiary of defendant Cigna Group

Insurance ("Cigna"), paid Plaintiff the $208,000.00 in benefits demanded in the Second

Amended Complaint, defendant Bank of America as Successor to Countrywide Financial

Corporation ("BOA") filed the instant motion for summary judgment, arguing, *inter alia,* that it

is not a proper defendant under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), and that

Plaintiff's claims pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), have already been

dismissed.   BOA's motion also requests attorney's fees and costs, either as a sanction for

refusing to dismiss BOA from the action or pursuant to ERISA § 502(g)(1), 29 U.S.C.

§ 1132(g)(1).   Plaintiff not only opposes BOA's motion, arguing that it has a viable claim for an

equitable "surcharge" under § 502(a)(3), but requests that the Court *sua sponte* grant summary

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ DEC 1 3 2016 ★
BROOKLYN OFFICE

judgment to Plaintiff on this claim. In addition, Plaintiff requests permission to move pursuant to ERISA § 502(g)(1) for attorney's fees against Cigna and LINA (collectively, "the Insurers").

For the reasons set forth below, BOA's motion for summary judgment is granted and Plaintiff's request that the Court *sua sponte* grant summary judgment to Plaintiff is denied. BOA's motion for an award of attorney's fees and costs is denied without prejudice. The Court grants Plaintiff permission to file his proposed motion for attorney's fees and grants BOA permission to file a revised motion for attorney's fees pursuant to ERISA § 502(g)(1). The Court further directs Plaintiff and BOA to confer and to submit a proposed briefing schedule with respect to these motions.

## BACKGROUND

The facts pertinent to BOA's motion are undisputed and discussed in four prior opinions: *Thomas v. Cigna Grp. Ins.*, No. 09-CV-5029 (SLT)(RML), 2013 WL 12084484 (E.D.N.Y. Jan. 10, 2013) (*Thomas I*); *Thomas v. Cigna Grp. Ins.*, No. 09-CV-5029 (SLT)(RML), 2013 WL 635929 (E.D.N.Y. Feb. 20, 2013)(*Thomas II*); *Thomas v. Bank of Am.*, 581 F. App'x 39 (2d Cir. 2014)(summary order)(*Thomas III*); and *Thomas v. Cigna Grp. Ins.*, No. 09-CV-5029 (SLT)(RML), 2015 WL 893534 (E.D.N.Y. Mar. 2, 2015)(*Thomas IV*). Although familiarity with these opinions is assumed, the Court will briefly recap the history of this litigation for the reader's convenience.

In 2002, Judith Thomas (the "Decedent") began working for Countrywide Financial Corporation ("Countrywide"), which is now a wholly owned subsidiary of BOA. *Thomas IV*, 2015 WL 893534, at *1. As an employee, she automatically received various benefits, including Basic Life Insurance. *Id.* She also opted to enroll in Countrywide's Voluntary Life Insurance

Plan, which required her to pay contributions to cover the premiums. *Id.* She named her brother, Raymond Thomas ("Mr. Thomas"), as the beneficiary of both policies. *Id.*

Countrywide's Basic Life Insurance Plan and Voluntary Life Insurance Plan were underwritten by LINA pursuant to two group insurance policies. Under the terms of the policies, the Plan Administrator appointed LINA as "the Plan Fiduciary ... for the review of claims for benefits ... and for deciding appeals of denied claims." Group Policy No. FLX-980007, p. 20 (LINA 46); Group Policy No. FLX-980008, p. 14 (LINA 72).[1] LINA was granted "the authority, in its discretion, to interpret the terms of the Plan documents, to decide questions of eligibility for coverage or benefits under the Plan, and to make any related findings of fact." *Id.* The policies provided that LINA's decisions would be "final and binding on participants and beneficiaries of the Plan to the full extent permitted by law." *Id.*

These policies also provided that an insured employee's coverage would end when the employee was no longer in "Active Service." *Thomas I*, 2013 WL 12084484, at *2. However, the policies contained "continuation options" that would enable such an employee to continue to be covered after leaving Active Service. *Id.* One of these continuation options, which the policies characterized as benefits, was "Waiver of Premiums." *Id.* Disabled employees seeking to avail themselves of this benefit needed to submit proof of disability within a specified period. *Id.*

In October 2004, the Decedent became disabled and left Active Service. *Thomas IV*, 2015 WL 893534, at *2. She died in May 2008, without ever returning to work or applying for

---

[1] These documents are included in Exhibit H to the Declaration of Emily A. Hayes in support of the Insurers' initial motion for summary judgment (ECF Docket 72-1).

the Waiver of Premium benefit. *Id.* Accordingly, when her brother sought to recover under the life insurance policies, LINA denied his claims on the ground that the policies had lapsed.

In November 2009, Mr. Thomas commenced this ERISA action against Cigna and BOA, as successor to Countrywide. Although the original complaint alleged that the defendants had failed "to administer and pay proceeds under a group life insurance claim" and that the Court had federal question jurisdiction under "20AUSCA [sic] Sec 1331, 29 U.S.C.A. Sec 1003, and 29 U.S.C.A. Sect 1132," Complaint, ¶¶ 1-2, that pleading contained only two state-law causes of action: a breach of contract claim against Cigna, which was alleged to be doing business as LINA, and a negligence claim against Countrywide. The complaint sought compensatory damages of $150,000 and punitive damages of $1 million under each cause of action.

After a pre-motion conference in which he agreed to abandon the negligence claim and the request for punitive damages, Mr. Thomas filed a First Amended Complaint which added LINA as a defendant and alleged a single cause of action for breach of contract and violation of ERISA laws. The cause of action itself did not specify a particular section of ERISA, although the jurisdictional allegations in the amended pleading alleged that the Court had jurisdiction under 29 U.S.C.A. § 1132. The First Amended Complaint sought only "the sum of $150,000.00 together with pre-judgment interest on that amount from the date of the plaintiff's claim" and attorney's fees.

In a letter dated August 24, 2010, Mr. Thomas requested permission to amend his pleading yet again, solely for the purpose of increasing the amount of money damages requested from $150,000.00 to $208,000.00. *See* Letter to Hon. Sandra L. Townes from Lowell B. Davis, dated Aug. 24, 2010. That letter represented that, during the course of discovery, Mr. Thomas

4

had learned "that the value of each life insurance policy at issue is $104,000.00 ... and together add up to $208,000.00 ...." *Id.* Noting that this amount was "more than the $150,000.00 ... demanded" in the First Amended Complaint, Mr. Thomas requested permission to amend his pleading with respect to damages. *Id.*

Defendants did not object to this request and on September 16, 2010, Mr. Thomas filed a Second Amended Complaint. That pleading was essentially identical to the First Amended Pleading, except with respect to the amount of damages sought. Specifically, the Second Amended Complaint demanded judgment "in the sum of $208,000.00 together with pre-judgment interest on that amount from the date of the plaintiff's claim, together with counsel fees and ... such other and further relief as ... this court deems just and proper." Second Amended Complaint, p. 7. The pleading did not request a "surcharge" or any other form of equitable relief. In addition, although it alleged that the defendants had "failed to provide the decedent with reasonable notice as to the requirements to apply for Waiver of Premium Benefits," *id.*, ¶ 30, the pleading did not specifically allege a failure to provide Decedent with a summary plan description or a breach of a fiduciary duty.

### *The Initial Motions for Summary Judgment*

Mr. Thomas and the defendants subsequently cross-moved for summary judgment. Plaintiff argued that he was entitled "pursuant to 29 U.S.C. [§] 1132(a)(1)(b) [*sic*] ... to recover the value of the two life insurance policies" and "entitled to the same relief pursuant to 29 U.S.C. [§] 1132(a)(3) and 29 U.S.C. [§]1104(a)." Plaintiff's Memorandum of Law in Support of Motion for Summary Judgment, dated June 1, 2011, p. 21. The Insurers argued that Plaintiff could not state a claim under 29 U.S.C. § 1132(a)(1)(B) because Decedent was not covered by the life

5

insurance plans. *See* Memorandum of Law in Support of Motion for Summary Judgment of Defendants Cigna and LINA, dated May 31, 2011, pp. 10-12. In the alternative, the Insurers argued that if plaintiff could state such a claim, LINA's decision to deny benefits was not arbitrary and capricious. *Id.*, p. 8. Cigna and LINA also sought summary judgment with respect to Plaintiff's § 1132(a)(3) claim, noting that the Second Amended Complaint sought only money damages, rather than equitable relief. *Id.*, p. 13. BOA moved for summary judgment on the claims brought under pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), arguing that it was only Decedent's employer and not the Plan Administrator or within the limited category of defendants from whom Plaintiff could recover benefits. BOA's Memorandum of Law in Support of its Motion for Summary Judgment, pp. 2-3.

In a memorandum and order dated January 4, 2013, and filed January 10, 2013 (*Thomas I*), the Court granted Plaintiff's motion to the extent of remanding the action to LINA for further review. The Court found that "LINA acted arbitrarily and capriciously in assuming that Countrywide, by making its ... [summary plan description] available on the intranet, placed Decedent on notice of the Waiver of Premium provisions of the Policies." 2013 WL 12084484, at *20. The Court denied the defendants' motions, except to the extent that they argued that the Second Amended Complaint did not allege viable claims other than the claim pursuant to 29 U.S.C. § 1132(a)(1)(B). *Id.* at *21. With respect to that argument, the Court ruled that even if the Second Amended Complaint could be "read as asserting a claim pursuant to 29 U.S.C. § 1132(a)(3)," there was "no need to entertain such a claim" because Plaintiff was seeking to recover only the $208,000.00 in life insurance benefits and could obtain adequate relief under 29 U.S.C. § 1132(a)(1)(B). *Id.* The Court rejected BOA's argument that it was not a proper

6

defendant, noting that the Plan defined the term "Plan Administrator" as "the Company, or such other person or entity acting as its delegate that may be appointed by the Company from time to time to administer the Plan," and that the Plan further defined the term "Company" to mean "Countrywide ... or any successor thereto." *Id.* at *13.

Although Mr. Thomas subsequently filed a letter dated January 30, 2013, in which he requested "clarification" of *Thomas I*, he never moved for reconsideration of the dismissal of his § 502(a)(3) claim. Rather, he sought to "impose a schedule upon LINA within which to complete its review" and to limit the scope of that review, asserting that LINA's search for new evidence regarding the manner in which Countrywide provided its summary plan description ("SPD") to its employees would be a "useless formality." Letter to Hon. Sandra L. Townes from Lowell B. Davis, dated Jan. 30, 2013, pp. 1-2. at 1. The Court denied Mr. Thomas's requests. See *Thomas II*, 2013 WL 635929, at *3.

BOA alone appealed the Court's decision in *Thomas I*. BOA argued that it was not the Plan Administrator, noting the Plan stated that Countrywide had "appointed the Administrative Committee for the Employee Benefit Plans to administer the Plan." The Second Circuit dismissed BOA's appeal for lack of jurisdiction, holding that *Thomas I* was not an immediately appealable final order. *Thomas III*, 581 F. App'x at 41. However, the Second Circuit also implied that BOA's argument was correct, noting that the language appointing the Administrative Committee as Plan Administrator had been "ignored by the district court in its analysis of the issue." *Id.* at 40.

***The Second Set of Motions for Summary Judgment***

While BOA's appeal was still pending, Plaintiff and the Insurers again cross-moved for summary judgment. In *Thomas IV*—which was decided a few months after the Second Circuit's decision in *Thomas III*—the Court denied the Insurers' motion and granted Plaintiff's motion to the extent of remanding the matter to LINA for a second time. Although BOA had not yet moved for summary judgment, the Court noted that *Thomas III* "implie[d] that Countrywide had delegated ... its duties as Plan Administrator," and expressed optimism that Plaintiff's claims against BOA could be "resolved without motion practice." *Thomas IV*, 2015 WL 893534, at *25.

On April 2, 2015—the day after Mr. Thomas died—LINA paid the insurance benefits at issue. In mid-March 2016, the Estate of Raymond Thomas ("Plaintiff") and the Insurers resolved their dispute over the amount of pre-judgment interest due on those benefits. *See* Minute Entry dated March 14, 2016. The parties were unable, however, to resolve their dispute regarding attorney's fees. *Id.* In letters dated December 26, 2015, and July 7, 2016, Plaintiff requests a pre-motion conference in anticipation of moving for attorney's fees pursuant to ERISA § 502(g)(1), 29 U.S.C. § 1132(g)(1).

Plaintiff and BOA proved unable to reach a settlement of Plaintiff's claims against BOA. Accordingly, BOA now moves for summary judgment with respect to Plaintiff's claims against it. As discussed below, Plaintiff not only opposes that motion but requests that the Court *sua sponte* grant summary judgment to Plaintiff pursuant to Rule 56(f) of the Federal Rules of Civil Procedure.

***The Instant Motion***

BOA's Memorandum of Law in Support of its Motion for Summary Judgment ("BOA's Memo") principally argues that BOA is not a proper defendant with respect to claims for wrongful denial of benefits under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). BOA notes that the Plan itself stated that Countrywide had "appointed the Administrative Committee for Employment Benefit Plans to administer the Plan," and that this Committee subsequently delegated its authority to decide questions of eligibility for coverage or benefits under the Plan to LINA. BOA's Memo, p. 2, 4. Relying primarily on *Crocco v. Xerox Corp.*, 137 F.3d 105, 107 (2d Cir. 1998), BOA argues that Countrywide was not the Plan Administrator and that the Second Circuit "rightfully rejected the notion that some person or entity, other than the ... plan administrator, can be a '*de facto*' administrator and hence a proper party to a suit for ERISA benefits." BOA's Memo, p. 8.

BOA's Memo also anticipates that Plaintiff will seek to recover an equitable "surcharge" under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3). BOA argues that the Second Amended Complaint did not request equitable relief, but only money damages, and that the Court already dismissed with prejudice Plaintiff's claims pursuant to § 502(a)(3). In addition, BOA points out that LINA, not BOA, was the fiduciary who denied Plaintiff's claims for death benefits and argues that BOA should not be liable for consequential damages flowing from that denial.

Finally, BOA requests that the Court award BOA attorney's fees and and costs. BOA's argument suggests two theories. First, BOA notes that, in granting BOA permission to move for summary judgment, the Court stated that the motion could include an application for sanctions. Second, BOA implies that it is entitled to fees and costs under ERISA § 502(g)(1), 29 U.S.C.

§ 1132(g)(1), by citing to *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242 (2010), and alleging that if it prevails on this motion, BOA "will have achieved the requisite success on the merits for an award of fees and costs under ERISA." BOA's Memo, p. 15.

In a Memorandum of Law in Opposition to BOA's Motion for Summary Judgment ("Plaintiff's Opposition"), Plaintiff principally claims that he "is entitled to recover legal fees[,] pre-judgment interest and other damages from BOA resulting from the delay in the payment of the life insurance benefits to [P]laintiff." Plaintiff's Opposition, p. 6. Plaintiff alleges that the delay in the payment of benefits forced Mr. Thomas "to go into the market, using this lawsuit as collateral, to obtain a loan to replace a portion of the payment of life insurance benefits due him at an exorbitant rate of 4.5% monthly ...." *Id.*, p. 10. However, Plaintiff does not offer evidence to contradict the fact that the Plan named the Administrative Committee for Employment Benefit Plans as the Plan Administrator, and that the Plan Administrator delegated the authority to decide questions of eligibility for benefits to LINA. Rather, Plaintiff asserts that "persons can ... be deemed a 'de facto' plan administrator" and that Plaintiff should be able to "recover damages" from such persons "in the form of a surcharge." Plaintiff's Opposition, pp. 6-7. Plaintiff implies that BOA should be deemed a de facto plan administrator, asserting that "Plaintiff can recover ... a surcharge from BOA as a consequence of the delay in the payment of benefits to plaintiff ...." *Id.*, p. 12.

Plaintiff tacitly acknowledges that the "surcharge" is equitable relief, but argues that the Court's dismissal of his equitable claims in *Thomas I* was premature. *Id.*, pp. 8-9. Plaintiff also asserts: "It is clear from paragraph 30 ... of plaintiff's second amended complaint that the primary allegation is that the defendants failed to give plaintiff proper notice of the plan requirements,

more a breach of a fiduciary duty than a statutory ERISA violation." *Id.*, p. 9. Plaintiff then proceeds to argue that BOA "breach[ed] ... its fiduciary duty in failing to properly distribute the plan SPDS in accordance with 29 C.F.R. 2520.104b-1(c)(i)(A)." Plaintiff's Opposition, p. 10.

Plaintiff argues that the Court should not only deny BOA summary judgment, but should *sua sponte* grant Plaintiff summary judgment pursuant to Fed. R. Civ. P. 56(f). Plaintiff implies that the uncontroverted facts establish that he has "suffered a separate injury and consequential damages other than those remedied by the payment of the Life Insurance benefits." *Id.*, p. 13. In addition, Plaintiff argues that he, not BOA, is entitled to attorney's fees as the prevailing party under *Hardt v. Reliance Standard Life Ins. Co.*, *supra*.

In its Memorandum of Law in Reply to Plaintiff's Opposition to its Motion for Summary Judgment ("BOA's Reply"), BOA argues, *inter alia*, that Plaintiff's request to have the Court reconsider that portion of *Thomas I* which dismissed Plaintiff's § 502(a)(3) claim is untimely. However, BOA's Reply also advances several arguments for dismissing Plaintiff's equitable claim. BOA argues, *inter alia*, that LINA denied Plaintiff the life insurance benefits, and that BOA is not responsible for consequential damages flowing from that decision. BOA also implies that the existence of a statutory remedy precludes Plaintiff from seeking equitable relief under § 502(a)(3) for the failure to provide the SPDs.

## DISCUSSION

### Summary Judgment

Summary judgment is appropriate only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the

assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may [, *inter alia* ] ... consider the fact undisputed for purposes of the motion [or] ... grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e).

### Section 502(a)(1)(B)

ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), empowers a beneficiary of an employee benefit plan to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." In *Leonelli v. Pennwalt Corp.*, 887 F.2d 1195 (2d Cir. 1989), the Second Circuit stated that "only the plan and the administrators and trustees of the plan in their capacity as such may be held liable" under § 502(a)(1)(B). *Id.*, at 1199. The Second Circuit subsequently held that a claims administrator who exercises total control over a plan's claims process may also be "a proper defendant under § 502(a)(1)(B)." *N.Y. State Psychiatric Ass'n, Inc. v. UnitedHealth Grp.*, 798 F.3d 125, 132-33 (2d Cir.), *cert. denied sub nom. UnitedHealth Grp., Inc. v. Denbo*, —U.S.—, 136 S. Ct. 506 (2015).

Conversely, the Second Circuit has made clear that an employer who has designated a plan administrator in accordance with 29 U.S.C. § 1002(16)(A) cannot be liable under § 502(a)(1)(B), even if it continues to function as a "*de facto* co-administrator." *Crocco v. Xerox Corp.*, 137 F.3d 105, 107 (2d Cir. 1998). This is true even when the designated plan administrator is an employee of the employer or a committee comprised of the employer's employees. For example, in *Fershtadt v. Verizon Commc'ns Inc.*, No. 07 Civ. 6963 (CM), 2010 WL 571818 (S.D.N.Y. Feb. 9, 2010), a district court granted summary judgment to defendant Verizon Communications on claims pursuant to § 502(a)(1)(B), noting that the plan named the Chairperson of the Verizon Employee Benefits Committee as the plan administrator, and that the plan administrator had delegated the authority to render eligibility decisions to the Verizon Claims Review Committee. The court held that, although the plan administrator and Claims Review Committee were "staffed by employees of Verizon Communications, Inc., the corporate entity itself [was] not named as the plan administrator, and therefore [was] not a proper party in an action for recovery of benefits." *Id.* at *8.

In this case, the Plan designated the "Administrative Committee for Employee Benefit Plans" as the Plan Administrator. *See* Countrywide Financial Corporation Group Insurance Plan, ¶ 2.35. Moreover, thIS Committee did not retain control over the claims process. Under the terms of the LINA's life insurance policies, the Plan Administrator appointed LINA as "the Plan Fiduciary ... for the review of claims for benefits ... and for deciding appeals of denied claims." Group Policy No. FLX-980007, p. 20 (LINA 46); Group Policy No. FLX-980008, p. 14 (LINA 72). These policies granted LINA "the authority, in its discretion, to interpret the terms of the Plan documents, to decide questions of eligibility for coverage or benefits under the Plan, and to

make any related findings of fact," and provided that these decisions would be "final and binding on participants and beneficiaries of the Plan to the full extent permitted by law." *Id.*

Plaintiff has not introduced any evidence that BOA fit within one of the categories of defendants that can be sued under § 502(a)(1)(B). Although Plaintiff's Opposition asserts that "admissible evidence reveals that BOA was in fact the Plan Administrator," the only evidence cited in support of this assertion is page 20 of Group Policy No. FLX-980007 and portions of the Plan which delineate the responsibilities of the Plan Administrator and a "Provider/Claims Administrator." Plaintiff's Opposition, p. 7 (citing LINA 46 & BAC 379-83). At most, this evidence might suffice to establish that LINA was a "Plan Fiduciary" or a "Provider/Claims Administrator," rather than the Plan Administrator. It does not establish that BOA was the Plan Administrator or a permissible defendant under § 502(a)(1)(B).

Plaintiff also argues that "persons can in fact be deemed a "de facto" plan administrator" and that beneficiaries can recover damages from such persons "in the form of a surcharge." Plaintiff's Opposition, pp. 6-7. The Court does not construe this argument as suggesting that it is permissible to impose § 502(a)(1)(B) liability upon BOA as a *de facto* plan administrator, since that argument has been expressly rejected in *Crocco*. 137 F.3d at 107. Rather, the Court construes Plaintiff's Opposition as attempting to impose liability pursuant to § 502(a)(3).

### Section 502(a)(3)

ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), permits a beneficiary of a plan to bring a civil action "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." The

14

Supreme Court has described § 502(a)(3) as a "catchall" provision which "act[s] as a safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy." *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996). "[W]here Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.'" *Id.* at 515.

The Supreme Court has "interpreted the term 'appropriate equitable relief' in § 502(a)(3) as referring to those categories of relief that, traditionally speaking (*i.e.*, prior to the merger of law and equity) were *typically* available in equity." *CIGNA Corp. v. Amara*, 563 U.S. 421, 439 (2011) (internal quotations and citations omitted; emphasis in original). Equity courts possessed, *inter alia*, "the power to provide relief in the form of monetary 'compensation' for a loss resulting from a trustee's breach of duty, or to prevent the trustee's unjust enrichment." *Id.* at 441. This kind of monetary remedy against a trustee was "sometimes called a 'surcharge.'" *Id.* at 442.

"The surcharge remedy extended to a breach of trust committed by a fiduciary encompassing any violation of a duty imposed upon that fiduciary." *Id.* In such cases, courts of equity "ordered a trust or beneficiary made whole following a trustee's breach of trust." *Id.* at 444. "[A] court of equity would not surcharge a trustee for a nonexistent harm." *Id.*

As the Supreme Court noted in *Amara*, ERISA typically treats employee benefits plans as trusts and typically treats plan fiduciaries as trustees. *Id.* at 439. Accordingly, ERISA fiduciaries can be surcharged under § 502(a)(3) where their breach of fiduciary duty can be shown by a preponderance of the evidence to have caused actual harm. *Id.* at 444. However, as the Second

Circuit noted in *New York State Psychiatric Ass'n, supra*, the source of the monetary losses alleged in the pleading must be the breach of a fiduciary duty, as opposed to mere monetary compensation that would not redress that breach.

In *New York State Psychiatric Ass'n*, a plaintiff, Denbo, sued a claims administrator, UnitedHealth Group, Inc. ("United"), for monetary compensation as well as declaratory and injunctive relief. While noting these "forms of relief 'closely resemble[ ]' the traditional equitable remedies of injunctive relief and surcharge," 798 F.3d at 135 (quoting *Amara*, 131 S.Ct. at 1879), the Second Circuit noted that Denbo's amended complaint was "not altogether clear about the source of Denbo's monetary losses." *Id.* The Court stated:

> If Denbo seeks true equitable relief—such as losses flowing from United's breach of fiduciary duty—the relief sought would "resemble[ ]" the remedy of surcharge, and would therefore be available to him under § 502(a)(3) .... If, on the other hand, the relief Denbo seeks is merely monetary compensation resembling legal damages—such as compensation that would neither redress a loss flowing from United's breach of fiduciary duty nor prevent United's unjust enrichment—the relief sought would be unavailable as an equitable remedy under § 502(a)(3).

*Id.* (internal citation omitted).

In this case, unlike in *New York State Psychiatric Ass'n*, the source of the money damages alleged in the complaint is entirely clear. Plaintiff's pleading expressly alleges that "defendant LINA ... insured the decedent's life in the amount of $208,000.00," Second Amended Complaint, ¶ 12, and that Plaintiff "has been damaged in the sum of $208,000.00 together with interest from and after July 2008." *Id.*, ¶ 36. Aside from costs and reasonable attorney's fees, the pleading does not request any other relief.

16

In *Thomas I*, the Court noted that Plaintiff's Second Amended Complaint did "not raise any viable claims other than the claim under [§ 502(a)(1)(B),] 29 U.S.C. § 1132(a)(1)(B)." 2013 WL 12084484, at *21. Accordingly, the Court ruled that, even if Plaintiff's Second Amended Complaint could be read as alleging an equitable claim under § 502(a)(3), that claim would be dismissed. *Id.* Plaintiff never moved for reconsideration of that ruling.

Plaintiff now argues in his opposition papers that the Court's dismissal of the § 502(a)(3) claims was premature. Plaintiff's Opposition, pp. 8-9. In support of this argument, Plaintiff relies primarily on *New York State Psychiatric Ass'n*, asserting that the district court in that case prematurely dismissed a plaintiff's § 502(a)(3) claims "at the motion-to-dismiss stage of the litigation," when "it was not clear ... that monetary benefits under § ... 502(a)(1)(B) alone would provide [the] plaintiff with a sufficient remedy ...." *Id.*, p. 9. Plaintiff further implies that paragraph 30 of the Second Amended Complaint can be read as alleging that "defendants failed to give plaintiff proper notice of the plan requirements, ... a breach of a fiduciary duty ...." *Id.*

Even if this portion of Plaintiff's Opposition were construed as a timely motion for reconsideration pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, the Court would decline to grant relief. First, this case is no longer in the motion-to-dismiss phase. By now, Plaintiff has not only recovered the $208,000.00 he sought, but has compromised his claim for prejudgment interest. The only relief requested in the Second Amended Complaint that Plaintiff has yet to receive is costs and attorney's fees—both of which are expressly authorized by statute. *See* ERISA § 502(g)(1), 29 U.S.C. § 1132(g)(1). Accordingly, even if dismissal of the

§ 502(a)(3) claims was premature in January 2013, it is clearly appropriate now that Plaintiff has obtained the remedy that he sought to recover under § 502(a)(3). *See N.Y. State Psychiatric Ass'n*, 798 F.3d at 134.

Second, the Second Amended Complaint does not allege facts that would put the defendants on notice that Plaintiff was attempting to raise a claim for a surcharge stemming from BOA's breach of fiduciary duties. Plaintiff implies that paragraph 30 of the Second Amended Complaint can be read as alleging that BOA breached its fiduciary duty by failing to provide the Decedent with SPDs. However, "[i]n order to state a claim for surcharge under section 503(a)(3) (*sic*) stemming from a failure to provide a plan summary as required by [ERISA § 104(b)(1)(A),] 29 U.S.C. § 1024(b)(1)(A), a plaintiff must plausibly allege: (1) that the Plan administrator had a fiduciary duty to the plaintiff; (2) that the fiduciary breached that duty; and (3) that 'actual harm' resulted, which may take the form of detrimental reliance, unjust enrichment, or the 'loss of a right protected by ERISA [such as] the failure to provide proper summary information, in violation of the statute' coupled with resulting damages." *Miles v. Corning Inc. Long Term Disability Plan*, 948 F. Supp. 2d 295, 298 (W.D.N.Y. 2013) (quoting *Amara*, 563 U.S. at 444 (brackets added in *Miles*). Paragraph 30—which only alleges that the defendants, including Countrywide, "failed to provide the decedent with reasonable notice as to the requirements to apply for Waiver of Premium Benefits"—does not state a claim for a failure to provide the Decedent with an SPD. It does not mention SPDs, much less suggest that the failure to follow the regulations for electronically providing SPDs was the cause of the failure to provide reasonable notice of the Waiver of Benefits requirements

Even if the allegations in paragraph 30 were sufficient to state a claim for a failure to provide the Decedent with an SPD, BOA would not be the fiduciary responsible for this breach of duty. Although Plaintiff faults BOA for failing "to properly distribute the plan SPDS in accordance with 29 C.F.R. 2520.104b-1(c)(i)(A)," Plaintiff's Opposition, p. 10, that regulation and the statute under which that regulation was promulgated places the responsibility for distributing the SPDs upon the plan administrator. As discussed above, the Plan designated the "Administrative Committee for Employee Benefit Plans" as the Plan Administrator. *See* Countrywide Financial Corporation Group Insurance Plan, ¶ 2.35. Although it may have been comprised of Countrywide employees, the Administrative Committee for Employee Benefits Plans is a distinct entity which has not been named as a defendant in this action.

Similarly, to the extent that Plaintiff seeks to recover "a surcharge from BOA as a consequence of the delay in the payment of benefits," Plaintiff's Opposition, p. 12, that delay is also not attributable to BOA. As noted on page 13, *ante*, the life insurance policies at issue granted LINA "the authority, in its discretion, to interpret the terms of the Plan documents, to decide questions of eligibility for coverage or benefits under the Plan, and to make any related findings of fact," and provided that these decisions would be "final and binding on participants and beneficiaries of the Plan to the full extent permitted by law." Group Policy No. FLX-980007, p. 20 (LINA 46); Group Policy No. FLX-980008, p. 14 (LINA 72). Accordingly, the delays in the payment of benefits under the policies was attributable to LINA, not BOA.

### *Rule 11*

Under Rule 11(b) of the Federal Rules of Civil Procedure, a person presenting a pleading, written motion or other paper to a court certifies:

> that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; [and] ...
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery ....

If a court determines that Rule 11(b) has been violated, the court "may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). However, a motion for such sanctions "must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b)." Fed. R. Civ. P. 11(c)(2).

To the extent that BOA's motion for attorney's fees and costs can be construed as incorporating a motion for Rule 11 sanctions, that motion is procedurally defective. First, the motion is included as part of a motion for summary judgment, in a section which can be construed as also requesting attorney's fees and costs pursuant to ERISA § 502(g)(1), 29 U.S.C. § 1132(g)(1). Second, the motion does not specifically describe the sanctionable conduct, other

than to allege that "Plaintiff ... has repeatedly refused to dismiss the Bank from this matter, despite the Bank's numerous requests and in spite of the procedural and factual history of this case." BOA's Memo, p. 15. These general allegations do not adequately describe the specific conduct which allegedly merits sanctions.

Even if the motion were not procedurally defective, the Court would not impose Rule 11 sanctions. That Rule is "targeted at situations 'where it is patently clear that a claim has absolutely no chance of success under the existing precedents, and where no reasonable argument can be advanced to extend, modify or reverse the law as it stands.'" *Stern v. Leucadia Nat'l Corp.*, 844 F.2d 997, 1005 (2d Cir. 1988) (quoting *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 254 (2d Cir.1985)). "When divining the point at which an argument turns from merely 'losing' to losing *and* sanctionable," district courts must "resolve all doubts in favor of the signer." *Associated Indem. Corp. v. Fairchild Indus., Inc.*, 961 F.2d 32, 34-35 (2d Cir. 1992) (internal quotations and citations omitted; emphasis in original).

In this case, several facts militate against imposing sanctions. First, Plaintiff's claims under § 502(a)(1)(B) were not frivolous in light of the law of the case. The Court rejected BOA's initial motion for summary judgment, holding that BOA's predecessor, Countrywide, was the Plan Administrator. *See Thomas I*, 2013 WL 12084484, at *13. Although the Court now rules to the contrary, Plaintiff was entitled to rely on the Court's previous ruling in seeking to collect damages from BOA for the delay in paying death benefits and for the failure to provide the SPDs.

Second, the contours of the surcharge theory on which Plaintiff's § 502(a)(3) claim is based are not well-defined. The Supreme Court first held that § 502(a)(3) encompassed the

21

surcharge remedy in mid-May 2011, *see Amara*, 563 U.S. at 441-42, exactly eight months after Plaintiff filed his Second Amended Complaint. Prior to that time, courts in this Circuit had held that money damages were "generally unavailable" under § 502(a)(3). *See, e.g., Lee v. Burkhart*, 991 F.2d 1004, 1011 (2d Cir. 1993); *Winfield v. Citibank, N.A.*, 842 F. Supp. 2d 560, 566 (S.D.N.Y. 2012); *Harrison v. Metro. Life Ins. Co.*, 417 F. Supp. 2d 424, 433 (S.D.N.Y. 2006).

Moreover, while *Amara* implied that a surcharge might be appropriate in cases involving a "failure to provide proper summary information, in violation of the statute," 563 U.S. at 444, that case left it to the lower courts to determine how and whether to apply the various equitable principles discussed in that case. *Id.* at 445. The cases from this Circuit which have helped to shape the surcharge theory are of recent vintage. Judge Spatt issued the opinion on which Plaintiff principally relies—*D'Iorio v. Winebow, Inc.*, 68 F. Supp. 3d 334 (E.D.N.Y. 2014)—on December 26, 2014, about ten weeks before the Court issued *Thomas IV*. *New York State Psychiatric Ass'n*, upon which this Court relies in its discussion of the surcharge theory at pages 15-16, *ante*, was not decided until August 20, 2015—several months after settlement discussions between Plaintiff and BOA had broken down and after BOA requested permission to file its second motion for summary judgment. In light of the uncertainty regarding the parameters of the surcharge remedy, it would not be appropriate to sanction Plaintiff for refusing to abandon his § 502(a)(3) claim.

### *ERISA § 502(g)(1)*

To the extent that BOA's motion for attorney's fees and costs is based on ERISA § 502(g)(1), the Court declines to rule on the motion at this time. First, BOA's Memo merely alleges that, if BOA succeeds on its motion for summary judgment, "it will have achieved the

requisite success on the merits for an award of fees and costs" under § 502(g)(1). BOA's Memo,

p. 15. It does not expressly argue that an award of fees and costs is appropriate in this case.

Second, Plaintiff has requested a pre-motion conference in anticipation of moving for attorney's

fees and costs against the Insurers under § 502(g)(1). It would be efficient to address both

Plaintiff's and BOA's § 502(g)(1) arguments simultaneously.

Accordingly, BOA's motion for an award of attorney's fees and costs is denied without

prejudice at this time. The Court grants Plaintiff permission to make his proposed motion for

attorney's fees and costs against the Insurers and grants BOA permission to file a revised motion

for attorney's fees against Plaintiff pursuant to § 502(g)(1). The Court directs Plaintiff and BOA

to confer and to submit a proposed briefing schedule with respect to these motions.

## CONCLUSION

For the reasons set forth above, BOA's motion for summary judgment is granted and

Plaintiff's request that the Court *sua sponte* grant summary judgment to Plaintiff is denied.

BOA's motion for an award of attorney's fees and costs is denied without prejudice at this time.

The Court grants Plaintiff permission to file his proposed motion to collect reasonable attorney's

fees and costs from the Insurers and grants BOA permission to file a revised motion for

attorney's fees pursuant to ERISA § 502(g)(1). The Court directs Plaintiff and BOA to confer

and to submit a briefing schedule with respect to these motions on or before December 23, 2016.

**SO ORDERED.**

/s/ *Sandra L. Townes*
/SANDRA L. TOWNES
United States District Judge

Dated: December **9** , 2016
Brooklyn, New York

23